UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JUDAH HARGROVE,                    :
                                   :   NO. 1:02-CV-00703
         Petitioner,               :
                                   :   **OPINION & ORDER**
                                   :
    v.                             :
                                   :
                                   :
JAMES HAVILAND, WARDEN,            :
                                   :
         Respondent.               :

        This matter is before the Court on the Report and
Recommendation of the Magistrate Judge (doc. 21), the Respondent's
Objections to the Report and Recommendation (doc. 22),
Petitioner's Motion to Strike Respondent Warden's Objections to the
Magistrate's Report and Recommendation (doc. 24), and the
Petitioner's Response to Respondent's Objections to the
Magistrate's Supplemental Report and Recommendation (doc. 25).

        Petitioner Judah Hargrove (hereinafter "Hargrove")
is an inmate in state custody at the Southern Ohio Correctional
Facility in Lucasville, Ohio (doc. 21).  Hargrove was found guilty
of aggravated burglary and drug abuse, as defined by Ohio law, and
sentenced to consecutive terms of ten to twenty years for
aggravated burglary and two years for drug abuse (Id.).  Hargrove,
with the assistance of new counsel, filed an appeal to the Ohio
Court of Appeals (Id.).  Hargrove raised the following assignments
of error:

1. The jury verdict of guilty was based on insufficient evidence where all the essential elements of aggravated burglary had not been proven beyond a reasonable doubt.

2. Hargove's conviction of aggravated burglary ignored a reconcilable theory of his innocence.

3. The trial court committed prejudicial error in not submitting instruction on lessor included offenses of the offense of aggravated burglary to the jury.

4. The trial court erred in overruling the motion of Hargrove for a Criminal Rule 29 directed verdict after the close of the state's case and at the close of all evidence.

(Id.). The Ohio Court of Appeals overruled Hargrove's assignments of error and affirmed his conviction and sentence (Id.). An appeal to the Ohio Supreme Court was not timely filed (Id.).

Eventually, Hargrove filed, pursuant to Ohio. App. R. 26(B), a pro se application to reopen his appeal (Id.). In his 26(B) application, Hargrove raised the following claims:

1. He was deprived of the effective assistance of counsel on direct appeal where such counsel failed to recognize, argue and brief the prosecution's failure to prove the aggravating factor of a person being present or likely to be present an essential element of aggravated burglary under Ohio Rev. Code § 2911.11(A)(3) as charged.

2. He was deprived of the effective assistance of counsel where his counsel failed to recognize, argue and brief the plain error of appellant being sentenced to an indefinite sentence when as a matter of law he should have been afforded a definite sentence in accordance with Ohio Rev. Code § 1.58(B).

-2-

(Id.). The Ohio Court of Appeals ultimately found that Hargrove's application for reopening was without merit (Id.). This ruling was timely appealed to the Ohio Supreme Court which declined jurisdiction to hear the case and dismissed the appeal as not involving any substantial constitutional question (Id.).

On January 28, 2000, Hargrove filed a federal petition for writ of habeas corpus (Id.). Hargrove maintained in his petition that the evidence was not sufficient to convict him of aggravated burglary and that this defect violated his right to due process under the Fourteenth Amendment to the Constitution (Id.). Respondent James Haviland (hereinafter "Haviland") moved the Court to dismiss the petition because Hargrove failed to exhaust his Ohio remedies with respect to his claim by completing his direct review via an appeal to the Ohio Supreme Court (Id.). On January 2, 2001, this Court issued an Order dismissing the petition without prejudice so that Hargrove could exhaust his Ohio remedies by filing a motion for a delayed appeal in the Ohio Supreme Court (Id.). The Order also tolled

the limitations period applicable to habeas corpus petitions as of the filing date of the petition, conditioned upon Hargrove pursuing his state remedies within thirty days of the Order and filing a new petition within thirty days after exhaustion of his Ohio state remedies (Id.). Hargrove filed a Notice of Appeal to the United States Court of Appeals for the Sixth Circuit as it related to this

-3-

Court's ruling on the tolling provision (Id.).

Hargrove pursued his state remedies while the appeal to the Sixth Circuit was pending (Id.). His pursuit at the state level included the filing of a delayed direct appeal to the Ohio Supreme Court (Id.). The Ohio Supreme Court, on May 2, 2001, denied Hargrove's motion for a delayed appeal (Id.). On May 14, 2002, Hargrove filed in this Court a motion to file a renewed habeas corpus petition and to reactivate the case because he had exhausted his state court remedies as this Court's Order instructed (Id.). In an Order dated August 3, 2001, this Court determined that it had no jurisdiction to consider Hargrove's petition while Hargrove's appeal was pending before the Sixth Circuit (Id.). In this Order, Hargrove was instructed to file a new petition in a new case upon resolution of his appeal (Id.). In August 2002, the Sixth Circuit affirmed the judgment of the district court and on October 1, 2002 Hargrove filed the instant petition for a writ of habeas corpus asserting the same claim as referenced above (Id.). Haviland, in his return of writ, asserted that Hargrove's claim lacked merit (doc. 15).

The Magistrate Judge, in his Report and Recommendation, concludes that Hargrove is entitled to habeas corpus relief with respect to his claim that the evidence was insufficient to sustain his aggravated burglary conviction (Id.). The Magistrate Judge aptly notes that pursuant to the Antiterrorism

-4-

and Effective Death Penalty Act ("AEDPA") a petitioner is not entitled to federal habeas corpus relief, unless the state court's adjudication of his claim resulted in a decision that (1) was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, or (2) was based on an unreasonable determination of the facts in light of the evidence presented in state court proceedings (Id. citing 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 402-03 (2000); Harris v. Stovall, 212 F.3d 940, 942 (6th Cir. 2000); cert denied, 532 U.S. 947 (2001)).  For a state court decision to be "contrary to" clearly established federal law, the state court must have arrived at a conclusion opposite to that reached by the United States Supreme Court on a question of law or have decided a case differently than the Supreme Court has on a set of materially indistinguishable facts (Id. citing Williams at 405-06; Harris at 942)).

The Magistrate Judge reports that an "unreasonable application" of Supreme Court precedent occurs where (1) the state court identifies the correct legal standard but unreasonably applies it to the facts of the case, or (2) the state court either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply (Id. citing Williams at 407-08).  The Magistrate Judge further

-5-

reports that the reasonableness inquiry is objective (<u>Id</u>. <u>citing</u> <u>Williams</u> at 409-10).

Additionally, the Magistrate Judge reports that in a case where the state court has failed to address the constitutional issues raised, the federal court conducts a <u>de novo</u> review, instead of applying the AEDPA standard of review which applies only to cases "adjudicated on the merits in state court" (<u>Id</u>. quoting <u>Maples v. Stegall</u>, 340 F.3d 433, 436-37 (6th Cir. 2003)). Also reported is the requirement that a state court prove beyond a reasonable doubt every fact necessary to constitute the offense charged (<u>Id</u>. <u>citing</u> <u>In Re Winship</u>, 397 U.S. 358, 363-64 (1970)). When reviewing a petitioner's claim that insufficient evidence existed to convict, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979) (<u>emphasis</u> <u>in</u> <u>original</u>). When applying the standard as enunciated in <u>Jackson</u>, it should be applied with explicit reference to the criminal offense as defined by state law. <u>Scott v. Perini</u>, 662 F.2d 428, 431 (6th Cir. 1981), <u>cert</u> <u>denied</u> 456 U.S. 909 (1982). The court must not substitute its own opinion for that of the trier of fact which convicted the petitioner; the court should not weigh the credibility of witnesses. <u>Walker v. Engle</u>, 703 F.2d 959, 969-70

-6-

(6th Cir. 1983).

The Magistrate Judge discusses the Ohio Court of Appeals opinion which found that Hargrove's sufficiency of evidence claim lacked merit (doc. 21). The Ohio Court of Appeals concluded that "the facts proved by the state demonstrated that . . . [Hargrove], with the assistance of a companion, trespassed by forcing his way into the permanent residence of Demetrius Gray with the purpose of committing a theft offense" (Id.). At Hargrove's trial, his accomplice testified that he and Hargrove met at a mutual friend's home on April 6, 1996 (Id.). After leaving the home, Hargrove educed his accomplice's help in retrieving back a camera that another individual had allegedly stolen from him (Id.). The accomplice testified that he first acted as a lookout while Hargrove tried to open a patio door of the home where he suspected his camera was located (Id.). However, Hargrove instead asked his accomplice to break a window with a rock (Id.). The accomplice broke the window, entered the apartment, unlocked the patio door, and retrieved the camera (Id.). Hargrove then entered through the unlocked patio door and took some clothes (Id). At 7:40 P.M., a neighbor witnessed the entire incident and a pedestrian later observed the two men carrying a handful of clothes which they hid in some bushes (Id.). The detective involved in the case testified that he met with the victim and observed that the apartment was furnished and that the name of the victim appeared on the mailbox

(<u>Id</u>.).

> Under Ohio law, aggravated burglary is defined as:
>
> > (A) No person, by force, stealth, or deception, shall trespass in an occupied structure, as defined in section 2909.01 of the Revised Code, or in a separately secured or separately occupied portion thereof, with purpose to commit therein any theft offense, as defined in section 2913.01 of the Revised Code, or any felony, when any of the following apply:
> >
> > (3) The occupied structure involved is the permanent or temporary habitation of any person, in which at the time any person is present or likely to be present.

(<u>Id</u>.). Because aggravated burglary, as defined under Ohio law, is "designed to protect homes where the danger of harm is greatest" the possible penalty is higher than that for ordinary burglary (<u>Id</u>. <u>quoting</u> <u>State v. Wilson</u>, 388 N.E.2d 745, 750 (Ohio 1979)). Aggravated burglary in Ohio requires the state to prove both that the structure was a permanent or temporary habitation and that the structure was one in which a person was present or likely to be present (<u>Id</u>. <u>citing</u> <u>Wilson</u> at 750). Once the state proves that a permanent or temporary habitation has been burglarized, any assumption that a person was likely present would "unconstitutionally presume the existence of an element of the offense" (<u>Id</u>. <u>quoting</u> <u>State v. Fowler</u>, 445 N.E.2d 1119, 1121 (Ohio 1983)). However, the jury may draw reasonable inferences from the evidence presented as to whether someone was likely to be present on the day in question (<u>Id</u>.).

-8-

In determining whether the dwelling was occupied, the court must examine "the probability or improbability of actual occupancy which in fact exists at the time of the offense, determined by all the facts surrounding that occupancy" (Id. quoting State v. Rodgers, No. 2001-CA-41, 2002 WL 13960646, at *2 (Ohio Ct. App., June 28, 2002) quoting Durham at 749)).  The Ohio Supreme Court has held that a person is likely present in a dwelling where: "[T]he state proves that an occupied structure is a permanent dwelling house which is regularly inhabited, and that such house was burglarized when the family was temporarily absent . . ." State v. Kilby, 361 N.E.2d 1336 (Ohio 1977).

In State v. Walters, No. 2775-M, 1998 WL 668378, at *2-3 (Ohio Ct. App., Sept. 30, 1998), the court found a likelihood that a person was present where one of the victims was at work and the other victim returned after the perpetrator had left the house because "the evidence support[ed] the inference that either could have returned throughout the course of the day."  Yet, where victims were at work all day and the prosecutor failed to inquire whether the victims ordinarily returned home during the day or whether others had access to the dwelling, the state failed to satisfy its burden.  State v. Pate, No. 53746, 1988 WL 43287 at *4 (Ohio Ct. App., May 5, 1988).  In instances where the victim is out of town, the courts determine whether someone else had access to the burglarized residence.  See e.g., State v. Weber, No. 97APA03-

322, 1997 WL 798299 at *3 (Ohio Ct. App., Dec. 23, 1997).

The Magistrate Judge concludes that in the instant matter, the evidence does not support the likely presence of the victim in the habitation the day of the burglary (doc. 21).  In support of this conclusion, the Magistrate Judge notes that: (1) the victim did not testify; (2) there was no evidence introduced about the victim's whereabouts on the day in question - such as, whether the victim worked and if so, during what time of day; and (3) the only evidence introduced concerning the victim came from the investigating detective (see discussion above) and this evidence went to the issue of whether the structure was a habitation, not whether the victim was likely present during the crime (Id.).  The Magistrate Judge states, "[t]his Court may not presume likely presence of the victim on the day of the crime from the facts proving the element of habitation . . . [additionally] the court is not persuaded by respondent's argument that because the crime occurred in the evening the victim was likely to be at home" (Id.).  This assertion, contends the Magistrate Judge, is merely speculative as no evidence was introduced concerning the victim's work schedule or daily routine (Id.).  Ultimately, the Magistrate Judge reports, "[a]fter viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could not have found the element of likely presence of the victim beyond a reasonable doubt" (Id.).

-10-

Therefore, the Magistrate Judge concludes that the State failed to present evidence of an element necessary for a conviction of aggravated burglary (i.e., the victim's likely presence in the habitation at the time of the trespass) (Id.). Consequently, the Magistrate Judge notes, that the ruling of the Ohio Court of Appeals finding sufficient evidence with respect to this crime was based on an unreasonable assessment of the facts in light of the record evidence and an unreasonable application of the Jackson standard (Id.).  Ultimately, the Magistrate Judge recommends that Hargrove's petition for habeas corpus relief pursuant to 28 U.S.C. § 2254 be granted unless, within ninety days of the date of this Court's final judgment or within such further time as the Court may allow for good cause shown, the Hamilton County Court of Common Pleas retries Hargrove on the aggravated burglary charge or alternatively, modifies Hargrove's conviction to burglary and imposes the appropriate sentence for the crime of burglary (Id.).

Haviland filed his Objections to the Report and Recommendation of the Magistrate Judge, arguing that Hargrove's claim of insufficiency of the evidence should not have been reviewed on the merits as it was procedurally defaulted in the state courts (doc. 22).  Hargrove filed a Motion to Strike Haviland's Objections to the Magistrate's Report and Recommendation (doc. 24).  In this Motion to Strike, Hargrove argues that since

-11-

Haviland's Objections were filed outside the prescribed time period they should be stricken (doc. 24).  However, Haviland filed his Objections on March 3, 2005 (Id.).  According to the Magistrate Judge's Report and Recommendation and pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, Haviland had ten days after being served with a copy of the Report and Recommendation to file any objections (doc. 21).  However, as Haviland aptly notes, taking into consideration the time computation requirements as set forth in Rule 6(a) of the Federal Rules of Civil Procedure, the date due for objections would have been, at the latest, March 3, 2005.  As such, Hargrove's Motion to Strike is not well-taken and the Court will consider Haviland's Objections.

As noted above, Haviland argues that Hargrove's petition should be viewed as procedurally barred (doc. 22). Haviland acknowledges that the State did not previously raise a procedural default with respect to Hargrove's claim because it was not until after the filing of the State's Motion to Dismiss and Return of Writ that the Sixth Circuit recognized the default in a published opinion (Id.).  Haviland notes that in June 2004 the Sixth Circuit issued an opinion holding that an Ohio Supreme Court entry denying a motion for leave to file a delayed appeal "constitutes a procedural ruling sufficient to bar federal court review" of the claims raised in the direct appeal.  Bonilla v. Hurley, 370 F.3d 494, 497 (6th Cir. 2004).  This is, according to

-12-

Haviland, what occurred in the instant matter (doc. 22).

Haviland, citing <u>Wainwright v. Sykes</u>, 433 U.S. 72 (1977), argues that if a defendant fails to present his federal claims to the state court in the manner required by a long-standing state procedural rule and the final state court addressing the claim holds that further consideration of the claim is precluded because of a defendant's procedural default, then a district court cannot consider the merits of the claim absent a showing of cause for the state procedural default and prejudice resulting from the constitutional error asserted by the defendant. <u>Id</u>. at 86-87; <u>see also</u> <u>Murray v. Carrier</u>, 477 U.S. 478, 485 (1986) and <u>Engle v. Isaac</u>, 456 U.S. 107 (1982). The Sixth Circuit has developed a four-part analysis when a state alleges a habeas claim is precluded by procedural default. <u>Maupin v. Smith</u>, 785 F.2d 135, 138 (6th Cir. 1986).

> 1. The court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
>
> 2. The court must decide whether the state courts actually enforced the state procedural sanction.
>
> 3. The court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.
>
> 4. Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state

> ground, then the petitioner must demonstrate
> under <u>Sykes</u> that there was "cause" for him not
> to follow the procedural rule and that he was
> actually prejudiced by the alleged
> constitutional error.

<u>Id</u>. Haviland argues that applying this four-part analysis to the instant matter results in the clear conclusion that Hargrove's claims were procedurally defaulted (doc. 22).

First, Haviland asserts that the procedural rule at issue is the Ohio Supreme Court's rule that direct appeals in criminal cases be filed within 45 days of the lower court's denial of relief (<u>Id</u>. <u>citing</u> Ohio S.Ct. R. II, Sec. 2(A)(1)(a)). Haviland further notes that pursuant to Ohio S.Ct. R. II, Sec. 2(A)(4)(a), a defendant, who fails to file a timely appeal, must demonstrate "adequate reasons" for filing a delayed appeal (doc. 22). Haviland maintains that Hargrove failed to comply with these provisions and that the Ohio Supreme Court dismissed his appeal on that procedural basis (<u>Id</u>.).

Haviland acknowledges that if Hargrove can demonstrate cause and prejudice then he can overcome the procedural default (<u>Id</u>.). However, Haviland contends that Hargrove cannot demonstrate cause (<u>Id</u>.). Haviland notes that Hargrove was on notice as early as September 24, 1998, when his motion to reopen his direct appeal was denied, that the insufficiency claim was considered by the Ohio courts to have been adequately dealt with in the first appeal of right (<u>Id</u>.). Consequently, concludes Haviland,

-14-

Hargrove should have been aware in September 1998 that in order to exhaust his insufficiency claim, he needed to file a delayed appeal to the Ohio Supreme Court (Id.).  Hargrove did file a delayed appeal in 2001 (Id.).  Haviland asserts that Hargrove cannot demonstrate cause for the more than three year delay between the Ohio Court of Appeals decision on direct review in December 1997 and the filing of his attempted delayed appeal in the Ohio Supreme Court in March 2001 (Id.).  As such, Haviland urges the Court to find Hargrove's claim procedurally defaulted (Id.).

Hargrove responds to Haviland's Objections arguing that Haviland did not raise the procedural default defense in either his Motion to Dismiss or Return of Writ (doc. 25).  As such, maintains Hargrove, Haviland has waived the defense of procedural default, and is barred from raising the defense at this time (Id. citing Trest v. Cain, 522 U.S. 87 (1997); Fed. R. Civ. P. 8(c); Fed. R. Civ. P. 8(d)).  The First Circuit, in the case of Oakes v. United States, 400 F.3d 92 (1st Cir. 2005), noted that "procedural default is an affirmative defense and . . ., therefore, the government may lose the defense by neglecting to raise it in a response to a habeas petition." Oakes at 96.

However, Oakes also notes that a procedural default raised sua sponte by a federal district court in the arena of habeas petitions brought pursuant to 28 U.S.C. § 2254 has been permitted in the First Circuit as well as other circuits.  Id.

-15-

citing <u>Brewer v. Marshall</u>, 119 F.3d 993, 999 (1st Cir. 1997); <u>Sweger v. Chesney</u>, 294 F.3d 506, 520-21 (3rd Cir. 2002); <u>Yeatts v. Angelone</u>, 166 F.3d 255, 261 (4th Cir. 1999); <u>Burgin v. Broglin</u>, 900 F.2d 990, 997-98 (7th Cir. 1990). <u>Oakes</u> involved a habeas petition brought pursuant to 28 U.S.C. § 2255 as opposed to one brought pursuant to § 2254, yet <u>Oakes</u> opined the rule should apply to both section 2254 and 2255 petitions. <u>Oakes</u> at 97. However, <u>Oakes</u> holds that the option to raise a procedural default <u>sua</u> <u>sponte</u> is merely discretionary and a district court may ultimately "choose to hold the government to its waiver." <u>Id</u>. citing <u>Hines v. United States</u>, 971 F.2d 506, 509 (10th Cir. 1992).

<u>Trest</u> involved a habeas petition brought pursuant to 28 U.S.C. § 2254, as Hargrove has done here. <u>Trest</u> stated, "procedural default is normally a defense that the State is obligated to raise and preserve if it is not to lose the right to assert the defense thereafter." <u>Trest</u> at 89 (<u>internal citations omitted</u>). Additionally, <u>Trest</u> noted that no precedent exists stating that a "habeas court must raise such a matter where the State itself does not do so." <u>Id</u>. Therefore, it is clear that a district court may, if it so chooses, raise the existence of a procedural default <u>sua</u> <u>sponte</u> despite the state having not done so. However, it is also clear that a district court may choose not to raise the procedural default <u>sua</u> <u>sponte</u>.

A defense of procedural default, as noted above, is

-16-

an affirmative defense. See e.g., Morrison v. Mahoney, 399 F.3d 1042, 1046 (9th Cir. 2005); Vang v. Nevada, 329 F.3d 1069, 1073 (9th Cir. 2003); Flood v. Phillips, 90 Fed. Appx. 108, 2004 WL 193164 (6th Cir. (Mich.) 2004). An affirmative defense is one that must be raised by a party, with a few exceptions, in the party's first responsive pleading. See F. R. Civ. P. 8(c); 12(b); & 12(g). The Sixth Circuit, in Flood, stated, "[t]he state . . . [i]s required to assert procedural default as an affirmative defense in its responsive pleading." Flood at *4. The State responded to Hargrove's habeas petition by first filing a Motion to Dismiss (doc. 3) and then filing a Return of Writ (doc. 15). Neither of these filings presented the procedural default defense now asserted in Haviland's Objections to the Report and Recommendation (doc. 22). A motion to dismiss is not a responsive pleading, however a Return of Writ is. See e.g., Morrison v. Mahoney, 399 F.3d 1042, 1046 (9th Cir. 2005) (stating that a motion to dismiss is not a responsive pleading).

The procedural default defense was not raised by the State until its Objections to the Report and Recommendation were filed (doc. 22). As the procedural default defense was not raised in the State's first responsive pleading (i.e., the Return of Writ), the State has waived said defense. Given that Haviland's only objection to the Report and Recommendation is one which has been waived by the State, the Court does not find Haviland's

-17-

Objections well-taken (doc. 22). Accordingly, the Court now turns to whether the Magistrate Judge's Report and Recommendation is thorough and accurate and, consequently, should be adopted.

Before addressing the thoroughness and accuracy of the Magistrate Judge's Report and Recommendation, the Court notes that even if it were to consider Haviland's procedural default defense, a ruling in Hargrove's favor would still be appropriate. Bonilla v. Hurley, 370 F.3d 494, 497 (6th Cir. 2004), explains that federal habeas review of a claim is barred unless the prisoner can demonstrate cause for the default and actual prejudice, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. Id. at 497 quoting Coleman v. Thompson, 501 U.S. 722, 750 (1991). In Bonilla, the Sixth Circuit found that the defendant's petition did not have a "colorable showing of actual innocence so as to demonstrate a fundamental miscarriage of justice which would permit review of [the] defaulted claims." Id. at 498, citing McCleskey v. Zant, 499 U.S. 467, 494-95 (1991); Murray v. Carrier, 477 U.S. 478, 496 (1986).

Here, however, Hargrove has demonstrated his actual innocence to the crime of aggravated burglary as aptly noted by the Magistrate Judge. As recounted by the Magistrate Judge, the State did not present evidence necessary to prove an essential element of aggravated burglary. Specifically, the Magistrate Judge reports that the State did not prove that someone was present or likely to

-18-

be present in the burglarized structure at the time of the offense. The Magistrate Judge did not find Haviland's argument that the victim was likely home because the crime occurred in the evening persuasive - an argument unpersuasive in this Court's opinion as well. Ultimately, the Magistrate Judge opines that viewing the evidence in the light most favorable to the prosecution a rational trier of fact could not have found, beyond a reasonable doubt, that the victim was likely present. This Court agrees.

Additionally, if the Court were to view Hargrove's claim as procedurally defaulted, a miscarriage of justice would occur if the merits of Hargrove's claims are not ruled upon. Aggravated burglary is a first-degree felony whereas "ordinary" burglary is a second-degree felony. The difference between the amount of time that a person could receive between a first-degree and second-degree felony, at the time of Hargrove's offense, was significant. Where the evidence was not presented to convict Hargrove of a first-degree felony, it is clearly a miscarriage of justice for him to serve a punishment correlated to a first-degree felony offense. As Hargrove notes in his Response to Haviland's Objections (doc. 25), a sentence for aggravated burglary would keep Hargrove in jail until 2021 - a sentence for burglary would keep him incarcerated no longer than 2011.

Pursuant to 28 U.S.C. §636(b), the Court has reviewed the Report and Recommendation de novo, finding it both

thoughtful and proper.  The Court finds it to be well-reasoned and thorough.  Accordingly, the Magistrate Judge's Report and Recommendation (doc. 21) is hereby ADOPTED IN ITS ENTIRETY. Haviland's Objections are OVERRULED (doc. 22).  Hargrove's Motion to Strike is DENIED.  Finally, Hargrove's Petition for Writ of Habeas Corpus (doc. 1) is GRANTED unless, within ninety days of the date of this Court's final judgment or within such further time as this Court may allow for good cause shown, the Hamilton County Court of Common Pleas retries Hargrove on the aggravated burglary charge or alternatively modifies Hargrove's conviction to burglary and imposes the appropriate sentence for the crime of burglary.


SO ORDERED.


Dated: June 7, 2005          /s/ S. Arthur Spiegel
                             S. Arthur Spiegel
                             United States Senior District Judge